**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| VICTOR MANUEL RODRIGUEZ, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| MICHAEL BARONE, et al. | : | No. 09-270 |

**MEMORANDUM RE: PETITIONER'S OBJECTIONS TO THE**
**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Baylson, J.                                                                          December 23, 2009

## I.     INTRODUCTION

Petitioner Victor Manuel Rodriguez filed a Petition for Writ of Habeas Corpus pursuant

to 28 U.S.C. § 2254 on January 29, 2009.  (Doc. 1).  The undersigned referred the case to

Magistrate Judge Jacob P. Hart for a Report and Recommendation ("R & R") on the merits.

(Doc. 4).  Magistrate Judge Hart filed his R & R on April 21, 2009 (Doc. 11), and presently

before the Court are Petitioner's objections, filed on May 4, 2009.  (Doc. 13).

Upon independent and thorough review, and for the reasons stated below, this Court

denies Petitioner's objections and adopts Magistrate Judge Hart's R & R.

## II.    BACKGROUND & PROCEDURAL HISTORY

Petitioner's conviction arose out of a shooting that occurred on December 5, 1996.  The

Commonwealth presented evidence that Petitioner was a leader in the Latin Kings street gang

and had ordered his subordinate Jorge Munoz to kill Christopher McNelly.  Munoz and

Petitioner were charged as co-conspirators, but they were tried separately.  Following an eight-

day trial in the Court of Common Pleas of Montgomery County, a jury convicted Petitioner of

first-degree murder and conspiracy. After the trial court denied post-trial motions, Petitioner was sentenced to life imprisonment without parole. The Superior Court of Pennsylvania affirmed the sentence. Commonwealth v. Rodriguez, 748 A.2d 776 (Pa. Super. Ct. 1999) (table). The Supreme Court of Pennsylvania denied Petitioner's request for discretionary review on May 17, 2000. Commonwealth v. Rodriguez, 758 A.2d 1198 (Pa. 2000) (table).

Petitioner filed his first petition for relief pursuant to the Pennsylvania Post Conviction Relief Act (PCRA), 42 Pa. Cons. Stat. Ann. § 9541 et seq., on October 24, 2000. After receiving the petition, Judge Samuel W. Salus appointed counsel for Petitioner. Appointed counsel filed an amended petition and a hearing was held before Judge Salus on March 14, 2001. Due to apparent neglect by Petitioner's PCRA counsel and administrative confusion arising from Judge Salus's retirement, no further action was taken on the case until after it was transferred to Judge Richard J. Hodgson in November 2002. Petitioner was appointed new counsel, and counsel filed a new amended petition. Following evidentiary hearings on September 16, 2005, March 28, 2006, and July 20, 2006, Judge Hodgson denied relief in an opinion dated September 22, 2006. Commonwealth v. Rodriguez, No. 4225-97 (Mont. C.C.P. Sept. 22, 2006).[1] The Superior Court of Pennsylvania affirmed the dismissal. Commonwealth v. Rodriguez, No. 2816 EDA 2006 (Pa. Super. Ct. Dec. 31, 2007). The Supreme Court of Pennsylvania then denied Petitioner's request for discretionary review. Commonwealth v. Rodriguez, 951 A.2d 1163 (Pa. 2008) (table).

Petitioner filed the present Petition for Writ of Habeas Corpus in federal court on January 20, 2009, generally claiming that: (1) his trial, appellate, and PCRA counsel provided

---

[1]A copy of this opinion was attached as Exhibit A to the Commonwealth's Response in Opposition to the Petition for Writ of Habeas Corpus. The Court will cite to the opinion according to its location on the docket—Doc. 9 Exhibit A.

constitutionally ineffective assistance under the standard set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984); (2) the Commonwealth intentionally failed to disclose evidence in violation of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963); and (3) Petitioner was the victim of "malicious prosecution." For clarity and ease of reference, the Court has appended to this memorandum a chart tracking the details and procedural histories of these claims. The Commonwealth filed a Response in Opposition to the Petition on March 25, 2009. (Doc. 8 & 9). Petitioner filed a Traverse in reply to this Response on April 6, 2009. (Doc. 10).

### III.   SUMMARY OF THE MAGISTRATE JUDGE'S R & R

After reciting the factual and procedural background of the case, Magistrate Judge Hart reviewed Petitioner's claims for federal habeas relief and recommended that they be denied. (Doc. 11, at 20). Namely, Magistrate Judge Hart concluded that: (1) although Petitioner raised numerous complaints regarding his counsels' performance at the pretrial, trial, appellate, and post-conviction stages, none of them warranted an award of federal habeas relief; (2) Petitioner failed to show any reason to disturb the PCRA court's determination that Petitioner's <u>Brady</u> claims lacked any evidentiary basis; and (3) Petitioner's claim of malicious prosecution was unexhausted and thus procedurally defaulted, and was also vague and conclusory.

### IV.   PETITIONER'S OBJECTIONS

Petitioner submitted objections to the R & R on May 4, 2009. (Doc. 13). Petitioner categorizes his objections under two broad headings: (1) "[t]he Magistrate's recommendation is not based on facts existing in the record of state proceedings, and, ipso facto, [is] not lawfully substantiated," (Doc. 13, at 2); and (2) "[t]he Magistrate failed to examine the entire state record in his determinations, which makes his recommendation in error and not based on facts as set

forth therein." (Doc. 13, at 13). Under these broad headings Petitioner raises numerous, more specific objections to the R & R, namely:

(1) the R & R improperly states the Defendant's current address;

(2) the R & R mischaracterizes the delay in his PCRA proceedings as resulting from an administrative mix-up;

(3) Petitioner has properly exhausted his <u>Brady</u> claim and his claim of malicious prosecution, and has provided direct evidence of the Commonwealth's intentional failure to disclose evidence;

(4) Magistrate Judge Hart erred in concluding that Petitioner failed to demonstrate ineffective assistance of counsel at the pretrial and trial stages;

(5) Magistrate Judge Hart erred in concluding that Petitioner failed to demonstrate ineffective assistance of counsel at the appellate stage; and

(6) Magistrate Judge Hart erred in concluding that Petitioner was not entitled to constitutionally effective assistance of counsel at the PCRA stage.

These objections are tallied in greater detail in the appended chart.

## V.     <u>STANDARD OF REVIEW</u>

In ruling on objections to the R & R of a United States Magistrate Judge, this Court reviews <u>de novo</u> only those findings of the R&R to which a petitioner specifically objects. 28 U.S.C. § 636(b)(1); <u>see also</u> Fed. R. Civ. P. 72. When reviewing documents filed <u>pro se</u> a court must keep in mind that "[a] document filed <u>pro se</u> is 'to be liberally construed.'" <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007) (quoting <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976)).

Review of Petitioner's claims for federal habeas relief is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254, which provides, in relevant part:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

§ 2254(d).

## VI.    DISCUSSION

The gist of Petitioner's general objections to the R & R is that Magistrate Judge Hart failed to properly consider the state-court record in his analysis of Petitioner's claims for federal habeas relief, opting instead to simply reiterate the findings and conclusions of the PCRA court. As the Court's de novo review of Petitioner's specific objections makes clear, however, Magistrate Judge Hart's treatment of Petitioner's claims for federal habeas relief reflects both a thorough comprehension of the record as well as a sound application of AEDPA's standard of review.

### A.    Objection 1 – R & R Improperly States Petitioner's Current Address

The R & R states that Petitioner is incarcerated at "the State Correctional Institute at Mahoney, in Frackville, Pennsylvania." (Doc. 11, at 1). Petitioner states that he is currently incarcerated at "SCI-Forest, P.O. Box 945, Marienville, PA, 16239." (Doc. 13, at 2). Though

the R & R incorrectly states Petitioner's current address, this objection has no relation to Petitioner's conviction or sentence, and will therefore be rejected.

**B.    Objection 2 – R & R Mischaracterizes Nature of Delay in PCRA Proceedings**

Petitioner takes issue with Magistrate Judge Hart's characterization of the three-and-a-half-year delay in Petitioner's case that occurred at the PCRA stage of proceedings.  (Doc. No. 13 at 5).  Magistrate Judge Hart describes this delay as being caused in part by "administrative mix-ups in the court,"[2] which, as the PCRA court indicated, arose from Judge Salus's retirement. (Doc. 11, at 3; Doc. 9 Exhibit A, at 2).  Petitioner objects to this description, asserting that the court "deliberately ignored [its] duty to diligently discharge its administrative responsibilities" with respect to his case.  (Doc. 13, at 5).  Although this delay in Petitioner's post-conviction collateral proceedings was unfortunate and the Court understands Petitioner's frustration with respect to it, it does not implicate Petitioner's federal constitutional rights and does not give rise to a cognizable claim for federal habeas relief.  Furthermore, there is nothing in the record to support Petitioner's claim that the court took deliberate action to cause the delay or that either the PCRA court or Magistrate Judge Hart inaccurately characterized it as an inadvertent administrative mix-up.  Nor is there any indication that Petitioner was prejudiced by the delay, as Petitioner's claims for post-conviction collateral relief proved meritless.  Accordingly, the Court will reject this objection.

**C.    Objection 3 – <u>Brady</u> and Malicious Prosecution Claims**

---

[2]Magistrate Judge Hart also noted the delay resulted from "apparent neglect of the case by [Petitioner's] PCRA attorney." (Doc. 11, at 3).  Petitioner's claims of ineffective assistance of counsel at the PCRA stage of proceedings are addressed below.

Petitioner asserts that the Commonwealth violated its duty to disclose exculpatory evidence, as set forth in Brady v. Maryland, in two respects: (1) by intentionally withholding evidence regarding a purported witness-tampering plot;[3] and (2) by intentionally failing to disclose that Michael Hoffman, a witness for the Commonwealth who testified that Petitioner confessed to him in jail, had been previously convicted not only of burglary, but also of a sex crime.

As Magistrate Judge Hart noted, Petitioner first presented his Brady claims before the PCRA court, which denied them for two reasons: (1) they were procedurally defaulted because Petitioner failed to raise them on direct appeal; and (2) even if not defaulted, Petitioner had failed to present any evidence to substantiate or support them.  (Doc. 9 Exhibit A, at  4, 16).  The PCRA court's determination was affirmed on appeal, and Magistrate Judge Hart declined to disturb the state court's finding that the claims lacked any evidentiary basis.  Magistrate Judge Hart determined that "[a] state court evidentiary decision is not cognizable in federal habeas corpus unless it results in an error which deprives a defendant of fundamental fairness in his criminal trial," and Petitioner "has not shown this."  (Doc. 11, at 19).  Petitioner objects that he exhausted these claims before all available state courts, he presented direct evidence with respect to them, and the conduct alleged in these claims prejudiced the outcome of his criminal proceedings. (Doc. 13, at 4–5).

Even if Petitioner's Brady claims have been properly exhausted, the Court agrees with Magistrate Judge Hart that Petitioner has failed to present adequate reason for disrupting the

---

[3]As discussed infra, this plot comprised attempts by relatives of Munoz to convince Luis Melendez and Tamara Hordinjenko to testify that Petitioner, and not Munoz, had been the shooter.

PCRA court's determination.  The PCRA court considered the evidence Petitioner has identified

with respect to these claims and found it provided inadequate foundation for them; there is

nothing to indicate this evidentiary assessment was erroneous, let alone that it rose to a level "of

constitutional proportion, cognizable in federal habeas corpus proceedings, . . . [by] depriv[ing]

Petitioner] of fundamental fairness in his criminal trial."  Bisaccia v. Attorney Gen. of N.J., 623

F.2d 307, 312 (3d Cir. 1980).  Accordingly, the Court agrees with Magistrate Judge Hart that

there is no basis for federal habeas relief with respect to these claims.

> Petitioner also brings a claim of malicious prosecution, asserting
>
> PCRA counsel revealed that, at trial, the State allowed witnesses who gave prior statements to alter their testimony to fit the prosecutor's theory of the case, to testify falsely as to criminal convictions, and, to elicit hearsay, innuendo and other prejudicial matter into his trial . . . .

(Doc. 1, at 9).  Magistrate Judge Hart determined that (1) Petitioner "never raised this claim

before a state court," rendering it "unexhausted and procedurally defaulted"; and (2) Petitioner

"has asserted no basis for this claim in his habeas petition" and thus "even if this claim had been

exhausted, it would be properly dismissed as vague and conclusory."  (Doc. 11, at 19).  Petitioner

objects that, "contrary to the Magistrate's assertion(s), this issue was mentioned in his PCRA

proceedings, and, his habeas petition, . . . wherein he alleged the prosecutorial misconduct in

denial of exculpatory information and suppression of the same from trial counsel . . . in efforts to

secure a conviction.  This is a 'malicious prosecution,' especially when, as in his case, it was

furthered by the allowance of false and perjured testimony of the State's witnesses . . . ."  (Doc.

13, at 2).

There is some confusion as to the nature of this claim.  The Court's review of the record confirms Magistrate Judge Hart's conclusion that Petitioner has not previously raised malicious prosecution as a claim.  Petitioner did, however, raise a claim of prosecutorial misconduct during the PCRA stage of his proceedings, which was coextensive with his <u>Brady</u> claims.[4]   Given that Petitioner's discussion of his malicious-prosecution claim in both his federal habeas petition and his objections to the R & R overlaps extensively with his discussion of his <u>Brady</u> claims,[5] it appears that Petitioner intended to refer to his previously raised prosecutorial-misconduct claim, but mistakenly characterized it as one for malicious prosecution.   To the extent Petitioner is renewing a claim for prosecutorial misconduct that is coextensive with his <u>Brady</u> claims, the Court denies it for the same reasons it has denied the <u>Brady</u> claims.  To the extent Petitioner is asserting a new claim distinct from the one for prosecutorial misconduct raised before the PCRA courts, the Court agrees with Magistrate Judge Hart that it is unsubstantiated and procedurally defaulted.

--------

[4]In Petitioner's PCRA appellate brief, for example, Petitioner's <u>Brady</u> claims are discussed under the heading, "Prosecutorial Misconduct Undermined the Truth Determining Process and Warrants a New Trial," and the brief states that "[i]nstances of prosecutorial misconduct constitute unconstitutional Brady violations."  (Doc. 9 Exhibit C, at 35).  The PCRA court also addressed these claims under the heading, "Brady Violations and Prosecutorial Misconduct." (Doc. 9 Exhibit A, at 16).

[5]For instance, Petitioner's assertion in his federal habeas petition that "the State allowed witnesses who gave prior statements to alter their testimony to fit the prosecutor's theory of the case, [and] to testify falsely as to criminal convictions" appears to refer to the witness-tampering plot and the undisclosed prior conviction addressed in his <u>Brady</u> claim.  (Doc. 1, at 9).  In his objections, furthermore, Petitioner states that "unlawful suppression of exculpatory evidence is, in fact, a prosecution not authorized by law, and, a malicious prosecution," and, citing to a portion of his PCRA appellate brief detailing his prosecutorial misconduct/<u>Brady</u> claims, asks, "By these facts, how can the Magistrate assert the issue [was] not . . . properly raised or asserted relating to malicious prosecution at the State court levels?"  (Doc. 13, at 3).

**D.     Objection 4 – Ineffective Assistance of Counsel: Pretrial and Trial Stages**

As summarized in the chart attached to this memorandum, Petitioner asserts he has received constitutionally ineffective assistance of counsel in numerous respects at the pretrial and trial stages. Petitioner's claim for ineffective assistance of counsel is governed by the standard articulated in Strickland v. Washington. "To prevail under Strickland, [Petitioner] must show that his counsel's deficient performance prejudiced him. To establish deficiency, [Petitioner] must show his 'counsel's representation fell below an objective standard of reasonableness.'" Porter v. McCollum, 130 S. Ct. 447, 452 (2009) (quoting Strickland, 466 U.S. at 688). "In light of 'the variety of circumstances faced by defense counsel [and] the range of legitimate decisions regarding how best to represent a criminal defendant,' the performance inquiry necessarily turns on 'whether counsel's assistance was reasonable considering all the circumstances.' At all points, '[j]udicial scrutiny of counsel's performance must be highly deferential." Wong v. Belmontes, 130 S. Ct. 383, 384–85 (2009) (citation omitted) (quoting Strickland, 466 U.S. at 688-89). "To establish prejudice, [Petitioner] 'must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Porter, 130 S. Ct. at 452 (quoting Strickland, 466 U.S. at 694). "In evaluating that question, it is necessary to consider all the relevant evidence that the jury would have had before it if [Petitioner's counsel] had pursued the different path . . . ." Wong, 130 S. Ct. at 386. Lastly, as Petitioner's claim is governed by AEDPA's standard of review, Petitioner "is entitled to relief only if the state court's rejection of his claim of ineffective assistance of counsel was 'contrary to, or involved an unreasonable application of' Strickland, or it rested 'on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding.'"
Porter, 130 S. Ct. at 452 (quoting 28 U.S.C. § 2254(d)).

Magistrate Judge Hart determined that, in light of the Strickland standard and the AEDPA standard of review, Petitioner has failed to demonstrate that his trial counsel provided ineffective assistance such that federal habeas relief would be warranted. Petitioner raises multiple objections to this determination, which the Court will address below.

### 1. Failure to call Heather Pierce and Nancy Meade as defense witnesses

Petitioner objects to Magistrate Judge Hart's rejection of his claim that trial counsel was constitutionally inadequate for failing to call Heather Pierce, common-law wife of Christopher McNelly, and Nancy Meade, a friend of McNelly and Pierce's, to testify as defense witnesses. After McNelly's shooting, both Pierce and Meade had provided statements to police regarding McNelly's behavior on the evening of the shooting; Pierce described certain of McNelly's actions and statements that evening, and Meade recounted what Pierce had told her that night about McNelly's conduct. Pierce also testified at trial as a witness for the prosecution regarding an altercation between McNelly and Petitioner in 1996 that gave rise to the enmity between them. At trial, counsel for Petitioner cross-examined Pierce, but called neither her nor Meade as part of the defense. According to Petitioner, their testimony regarding McNelly's behavior that evening would have bolstered his claim of self-defense, and no reasonable attorney would have made the decision to not seek this testimony. (Doc. 13, at 5–6).

As Magistrate Judge Hart noted, the PCRA court rejected this contention for multiple reasons, including the following: (1) Pierce and Meade's testimony, while potentially relevant to McNelly's state of mind that evening, would not have been relevant to Petitioner's state of mind,

as he was not aware of this behavior prior to the shooting.  This testimony, therefore, would not have aided his claim of self-defense.  (2) It is likely that testimony by Pierce or Meade regarding McNelly's statements would have been excluded as hearsay, as too would have the rest of Meade's testimony, since it simply would recite what Pierce told her.  (3) Counsel's assessment that Pierce had been a strong witness for the Commonwealth and that putting her back on the stand to testify to an undisputed fact (i.e., that McNelly had a gun in his possession) would hurt Petitioner's case was objectively reasonable.  (Doc. 9 Exhibit A, at 7–9).  Magistrate Judge Hart further noted that Pierce's and Meade's testimony, even if relevant and admissible, would not have influenced the outcome of the trial, given the amount of testimony provided at trial that contradicted Petitioner's account of the shooting and his theory of self-defense.  (Doc. 11, at 7–8).

While Petitioner may disagree with the PCRA court's assessment, there is no indication that it "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1), (2).  Petitioner objects that no reasonable lawyer would have refrained from calling Pierce and Meade as witnesses and that "when the alternative not chosen by counsel had a greater chance of success than that actually instituted thereby, counsel cannot be deemed as effective."  (Doc. 13, at 6).  Petitioner, however, misstates the standard for ineffectiveness under Strickland.  As outlined by the PCRA court, the testimony of Pierce and Meade was likely irrelevant, inadmissible, and unhelpful to Petitioner's case.  Petitioner fails to undermine this assessment of the PCRA court or otherwise demonstrate how trial counsel's decision was

objectively unreasonable and prejudicial to him, such that Petitioner would be entitled to relief under 28 U.S.C. § 2254(d).

### 2. Failure to call Angel Rodriguez as a defense witness

Petitioner objects to Magistrate Judge Hart's assessment of trial counsel's decision not to call Angel Rodriguez, Petitioner's father, as a defense witness. When this issue was first raised before the PCRA court, there was disagreement between trial counsel and Angel Rodriguez regarding whether counsel had contacted Angel Rodriguez to testify. Trial counsel testified that he had spoken to Angel Rodriguez by telephone before the trial and that Angel Rodriguez had emphatically refused to testify. Angel Rodriguez, meanwhile, testified that no one from the defense team contacted him and he, in fact, did not own a phone at the time. The PCRA court found trial counsel's version of events more credible, (Doc. 9 Exhibit A, at 6), and Magistrate Judge Hart determined that "the PCRA court's credibility determination was neither objectively unreasonable nor contradicted by other evidence." (Doc. 11, at 10). Petitioner objects that Magistrate Judge Hart failed to properly account for the fact that Angel Rodriguez did not speak English or own a telephone. (Doc. 13, at 8). According to trial counsel's testimony, however, the person with whom he spoke on the phone identified himself as Angel Rodriguez and had at least a rudimentary understanding of and fluency with the English language. (Doc. 9 Exhibit A, at 6). And, as trial counsel pointed out before the PCRA court and as Magistrate Judge Hart noted, even if Angel Rodriguez did not own a telephone, it is possible that Petitioner's father spoke to trial counsel from a phone outside his home. (Doc. 9 Exhibit A, at 6). Accordingly, there is no indication that the factual matters to which Petitioner objects were not considered by the PCRA court, and we agree with Magistrate Judge Hart that Petitioner has failed to provide a

basis for this Court to disrupt, on federal habeas review, the PCRA court's finding that trial

counsel contacted Angel Rodriguez and Rodriguez refused to testify.  See Miller-El v. Cockrell,

537 U.S. 322, 340 (2003) ("Factual determinations by state courts are presumed correct absent

clear and convincing evidence to the contrary, and a decision adjudicated on the merits in a state

court and based on a factual determination will not be overturned on factual grounds unless

objectively unreasonable in light of the evidence presented in the state-court proceeding."

(citations omitted)); see also Campbell v. Vaughn, 209 F.3d 280, 291 (3d Cir. 2000) (holding

that state post-conviction court did not make an unreasonable determination of fact when it

resolved a credibility dispute in favor of trial counsel, whom petitioner accused of

ineffectiveness).

Furthermore, as Magistrate Judge Hart detailed, it is unlikely that Angel Rodriguez's

testimony would have had any impact on the outcome of Petitioner's trial.  According to Angel

Rodriguez's testimony before the PCRA court, if he had been called at Petitioner's trial, he

would have testified that Petitioner had never been a member of the Latin Kings gang,

corroborating Petitioner's own testimony to that effect.  Extensive evidence was presented at

trial, however, indicating that Petitioner was not only affiliated with, but a leader in, the Latin

Kings.  (Doc. 11, at 10–11).  The Court agrees with Magistrate Judge Hart that, in light of this

testimony, "it is unlikely that [Angel Rodriguez's] testimony that his son had never actually been

a member of the Latin Kings would have seemed particularly credible to the jury."  (Doc. 11, at

11).

> **3.     Failure to call Tamara Hordinjenko as a defense witness and
> introduce evidence regarding the witness-tampering plot**

Petitioner objects to Magistrate Judge Hart's determination that trial counsel was not

ineffective for failing to call Tamara Hordinjenko as a defense witness to testify with respect to a witness-tampering plot. (Doc. 13, at 9). As detailed by the PCRA court, Hordinjenko provided a statement to police that, on January 3, 1997, she and Luis Melendez, her husband, were pressured by relatives of Munoz to change their statements to help Munoz and indicate that Petitioner, not Munoz, had been the shooter. (Doc. 9 Exhibit A, at 9). According to Petitioner, Hordinjenko's testimony is crucial evidence that goes to the credibility of the Commonwealth's witnesses, which was the sole issue at the trial, and also would have been helpful to his defense, as it suggests he is not a gang leader in control of those below him.

The PCRA court found trial counsel was not ineffective for failing to introduce testimony from Hordinjenko. First, the PCRA court noted Petitioner had provided no indication that Hordinjenko would have cooperated and testified on his behalf. (Doc. 9 Exhibit A, at 9). Second, the court found counsel's decision to not call Hordinjenko to be reasonable under the circumstances because, as counsel stated to the PCRA court, such evidence would have suggested a conspiracy or an organization was responsible for the killing and that Petitioner and Munoz were "in this group together," thereby undermining Petitioner's theory of self-defense. (Doc. 9 Exhibit A, at 10; PCRA Tr., 43–44, Sept.16, 2005). Lastly, the court found Petitioner suffered no prejudice, as the identity of Munoz as the shooter was undisputed at trial. (Doc. 9 Exhibit A, at 10). Upon review, Magistrate Judge Hart found no reason to disrupt these findings. (Doc. 11, at 12).

Petitioner objects to this analysis, asserting that "trial counsel never had an opportunity to review or inspect the information surrounding the witness-tampering plot as it was never given to him by the prosecutor," and thus "counsel made this determination [not to call Hordinjenko]

absent reasonable investigation." (Doc. 13, at 9). Given the importance of the credibility of witnesses testifying at trial, "[h]ad counsel, in fact, had this information [about witness-tampering] in his possession and opportunity to review the same, he would have used it to bolster [Petitioner's] defense." (Doc. 13, at 10).

Though Petitioner asserts this testimony would have aided his defense, he has not demonstrated that, contrary to the PCRA court's conclusion, Hordinjenko would have testified on his behalf, or that counsel's strategic decision not to introduce the testimony was objectively unreasonable given its potential inconsistency with his theory of self-defense. While Petitioner argues generally that counsel should have used this evidence to undermine the credibility of Commonwealth witnesses, he does not specify which witnesses would have been so undermined. In fact, as the PCRA court noted, Hordinjenko's statement to police revealed that she and Melendez aided the police in uncovering the witness-tampering plot. (Doc. 9 Exhibit A, at 9). Calling Hordinjenko to testify likely would have led to admission of this evidence as well, potentially bolstering rather than undermining the credibility of Melendez and Hordinjenko as witnesses. Lastly, Petitioner fails to demonstrate that introduction of evidence regarding this witness-tampering plot would have impacted the outcome of the case, given the undisputed identification at trial of Munoz as the shooter. Accordingly, the Court does not see reason under 28 U.S.C. § 2254 to disrupt the PCRA court's assessment of this claim.

### 4. Failure to use prior inconsistent statements of prosecution witnesses to impeach their credibility

Petitioner objects to Magistrate Judge Hart's determination that no prejudice resulted from trial counsel's failure to use prior statements made by prosecution witnesses Melendez,

Alejandro Morales, and Officer Michael Jones that were inconsistent with the testimony these witnesses offered at trial, to impeach their credibility.[6]  (Doc. 13, at 10).  According to Petitioner, "the credibility of the witnesses was the issue at trial" and "the usage of the inconsistent statements would have bolstered the Petitioner's claim of self-defense."  (Doc. 13, at 10).  As the PCRA court found and as Magistrate Judge Hart detailed, however, trial counsel brought out in cross-examination the inconsistencies between these witnesses' testimony and their prior statements, (Doc. 9 Exhibit A, at 12–14; Doc. 11, at 12–14); there is no indication counsel failed to use these inconsistencies to put the question of the witnesses' credibility before the jury.  Nor is there any indication that trial counsel's failure to seek to introduce these prior statements as substantive evidence either impaired the jury's ability to assess the credibility of these witnesses or compromised Petitioner's claim of self-defense.  Accordingly, the Court does not see reason under 28 U.S.C. § 2254 to disrupt the PCRA court's determination of no prejudice with respect to this claim.

### 5. Failure to seek an "accomplice" jury instruction

Petitioner objects to Magistrate Judge Hart's determination that trial counsel was not ineffective for failing to seek an "accomplice" jury instruction with respect to Melendez.  (Doc. 13, at 11).  As explained by the PCRA court, "[i]t is a rule in this Commonwealth that 'testimony

---

[6]It is unclear whether Petitioner intends to object to trial counsel's failure to use the statements for impeachment purposes, or failure to introduce the statements as substantive evidence.  In his objections, Petitioner notes that "[a]t page 12 of the [R & R], the Magistrate asserts no prejudice from the trial lawyer's failure to utilize the State's witness's inconsistent statements to impeach their credibility thereat."  (Doc. 13, at 10).  That portion of the R & R, however, addresses Petitioner's claim of ineffectiveness for failure to introduce the statements as substantive evidence, not for failure to use them to impeach the witnesses' credibility.  Accordingly, the Court will address both potential meanings of this objection.

of an accomplice of a defendant, given at the latter's trial, comes from a corrupt source and is to be carefully scrutinized and accepted with caution.'" (Doc. 9 Exhibit A, at 10) (quoting Commonwealth v. Corley, 816 A.2d 1109, 1114 (Pa. Super. Ct. 2003)). "'An accomplice charge is required only when the evidence permits an inference that the witness was an accomplice [of the defendant].' . . . Nevertheless, when such an instruction would contradict or be in derogation of the theory of defense, then there is a reasonable basis for trial counsel's decision not to request the instruction." (Doc. 9 Exhibit A, at 10–11) (citation omitted) (quoting Corley, 816 A.2d at 1114).

Before the PCRA court, trial counsel testified that he did not seek an accomplice instruction with respect to Melendez because doing so would "tend to support the Commonwealth's case of first-degree murder in that there was . . . some sort of conspiracy ahead of time to commit a murder," thereby contradicting Petitioner's theory of self-defense. (PCRA Tr., 45, Sept. 16, 2005). The PCRA court agreed that this was a justifiable strategy, (Doc. 9 Exhibit A, at 11), and Magistrate Judge Hart found no reason to disrupt that conclusion. (Doc. 11, at 15–16).

Petitioner objects, however, that "Melendez . . . was an accomplice relating to his association with Munoz, who actually pulled the weapon and shot the victim," and "since both Munoz and Melendez acted and carried out the killing of the victim, . . . an accomplice charge was proper and should have been given." (Doc. 13, at 11). Such an instruction, according to Petitioner, would have bolstered his theory of self-defense. Thus, Petitioner appears to be asserting in his objection that trial counsel should have sought a jury instruction that Melendez be considered a "corrupt source" of testimony in light of his status as an accomplice of Munoz,

not of Petitioner. As stated in <u>Corley</u>, however, an accomplice instruction is intended to address testimony offered by an accomplice of a defendant at that defendant's trial; accordingly, an accomplice instruction premised upon a relationship between Melendez and Munoz would not have been proper with respect to Petitioner's trial, and trial counsel cannot be faulted for failing to pursue it.

### 6.  Failure to call any witnesses other than Petitioner in his defense

Petitioner asserts trial counsel was ineffective because he failed to call any witnesses in Petitioner's defense other than Petitioner himself. (Doc. 1, at 12A-3). Petitioner renews this claim in his objections, claiming that counsel's failure to produce additional witnesses indicates that counsel performed inadequate pretrial investigation. (Doc. 13, at 6, 14). First, it does not appear that Petitioner has raised this claim in the state courts. Furthermore, that Petitioner was the only witness presented in his defense does not mean that trial counsel prepared inadequately or otherwise provided ineffective assistance. As discussed above, trial counsel was not ineffective for failing to call the witnesses that Petitioner subsequently has claimed would have benefitted his defense, and Petitioner has not specified any other grounds for this claim. Accordingly, even if properly exhausted, the Court would reject this claim as unsupported and conclusory.

### 7.  Cumulative effect of errors

Petitioner objects that Magistrate Judge Hart neglected to consider that "the cumulative effect(s) of all issues of lawyer incompetence at trial contributed to the adverse adjudication of guilty by the factfinder and so undermined the decision-making process that no fair adjudication took place." (Doc. 13, at 11). While Petitioner raised this claim before the PCRA court, it does

not appear that Petitioner did so in his Petition for federal habeas relief.[7]  Furthermore, even if he

had, there would be no reason to depart from the PCRA court's conclusion that "[b]ecause [it has

been] determined that there are no errors warranting relief, [Petitioner's] claim of cumulative

error must fail."  (Doc. 9 Exhibit A, at 16).

E.    **Objection 5 – Ineffective Assistance of Counsel: Appellate Stage**

Petitioner claims that appellate counsel provided ineffective assistance by failing to assert

trial counsel was ineffective in certain respects, and that Magistrate Judge Hart erred in

concluding otherwise.  We see no such error.  Petitioner's claim against appellate counsel is

premised upon appellate counsel's failure to pursue claims of ineffective assistance at the pretrial

and trial stages that are discussed above.  And, as already set forth, these claims do not establish

that trial counsel was constitutionally ineffective.  Accordingly, as the PCRA court and

Magistrate Judge Hart recognized, appellate counsel cannot be deemed ineffective for failing to

raise such claims.  See United States v. Sanders, 165 F.3d 248, 253 (3d Cir. 1999) (counsel

cannot be found ineffective for failing to raise a meritless claim).

F.    **Objection 6 – Ineffective Assistance of Counsel: PCRA Stage**

Petitioner claims he was denied effective assistance of counsel at the PCRA stage of his

proceedings.  Magistrate Judge Hart rejected this claim on the ground that Petitioner is not

constitutionally entitled to effective assistance of counsel at that stage.  (Doc. 11, at 18).

Petitioner objects, asserting that, under the Equal Protection Clause of the Fourteenth

Amendment of the United States Constitution, he has a constitutional entitlement to effective

---

[7]Petitioner notes in his Petition that this claim was raised before the PCRA court, (Doc. 1,
at 12A-9), but does not present it as a basis for relief on federal habeas review.

assistance of counsel in collateral proceedings. (Doc. 13, at 12). It is well established, however, that Petitioner has no federal constitutional right to effective assistance of counsel at the PCRA stage of proceedings, and thus, as Magistrate Judge Hart found, this claim does not present a cognizable ground for federal habeas relief. <u>See</u> 28 U.S.C. § 2254(i); <u>Coleman v. Thompson</u>, 501 U.S. 722, 752 (1991).

**VII.    <u>CONCLUSION</u>**

For the foregoing reasons, the Court will adopt the R & R and deny the Petition for Writ of Habeas Corpus.

An appropriate order follows.

| Claims raised in § 2254 petition: | Trial & Direct Appeal | PCRA | PCRA Appeal | Magistrate Judge Hart's R&R | Objection raised? |
|---|---|---|---|---|---|
| 1. *Ineffective assistance of counsel: pretrial and trial stages:* | | | | | |
| • failure to call Heather Pierce and Nancy Meade as defense witnesses | Raised (as to Pierce) & Denied | Raised & Denied | Raised & Denied | Denied | Yes |
| • failure to call Angel Rodriguez as defense witness | | Raised & Denied | Raised & Denied | Denied | Yes |
| • failure to call Tamara Hordinjenko as defense witness and introduce evidence regarding witness-tampering plot | | Raised & Denied | Raised & Denied | Denied | Yes |
| • failure to use prior inconsistent statements of prosecution witnesses to impeach their credibility | | Raised & Denied | Raised & Denied | Denied | Yes |
| • failure to seek "accomplice" jury instruction with respect to Melendez | | Raised & Denied | Raised & Denied | Denied | Yes |
| • failure to call any witnesses other than Petitioner in his defense | | | | Not addressed | Yes |
| • failure to discover past criminal history of Michael Hoffman | | Raised & Denied | Raised & Denied | Denied | No |
| • failure to challenge expert qualification of Officer Balan | Raised & Denied | | | Not addressed | No |

| | | | | | |
|---|---|---|---|---|---|
| 2. *Ineffective assistance of counsel: appellate stage* | | Raised & Denied | Raised & Denied | Denied | Yes |
| 3. *Ineffective assistance of counsel: PCRA stage* | | | Raised & Denied | Denied | Yes |
| 4. *Brady claims: failure to disclose evidence of witness-tampering plot; failure to disclose criminal history of Michael Hoffman* | | Raised & Denied | Raised & Denied | Denied | Yes |
| 5. *"Malicious prosecution"* | | | | Denied | Yes |
| **Claims raised in objections that were not raised in § 2254 petition:** | | | | | |
| *Ineffective assistance of counsel: pretrial and trial stages* | | | | | |
| • R & R's misstatement of Petitioner's address | | | | | Yes |
| • R & R's mischaracterization of delay in Petitioner's PCRA proceedings | | | | | Yes |
| • cumulative effect of errors of trial counsel | | Raised & Denied | Raised & Denied | Not addressed | Yes |